IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Jennifer Maudlin, | Civil Action No. |
| Plaintiff, | |
| v. | Judge |
| Inside Out, Inc. and William Stout, | **COMPLAINT** |
| Defendants. | **(Trial by Jury Requested)** |

## INTRODUCTION

1. This is a challenge brought by Plaintiff Jennifer Maudlin ("Plaintiff" or "Maudlin") against Defendants Inside Out, Incorporated ("Inside Out") and William Stout ("Stout") (collectively "Defendants").

2. Plaintiff brings this action to remedy sex discrimination, including pregnancy discrimination, committed by Defendants in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), Ohio Rev. Code §4112.02(A), prohibiting employment discrimination on the basis of sex and pregnancy, and wrongful discharge in violation of the public policy of the State of Ohio.

3. Plaintiff seeks injunctive and declaratory relief, damages, and other legal and equitable relief pursuant to Title VII, and Ohio Rev. Code §§4112.99 and 2315.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1367.

5. Venue is proper in this Court under 28 U.S.C. §1391 because the parties reside in this District, and the unlawful practices complained of occurred within this District.

6. On February 26, 2013, Plaintiff filed a charge with the Equal Employment Opportunity Commission (the "EEOC"), alleging the particulars of this complaint against Defendants. On August 28, 2013, the EEOC issued a Notice of Right to Sue, a copy of which is attached as Exhibit "A."

## THE PARTIES

7. Plaintiff Jennifer Maudlin resides in Springfield, Ohio. She is female. At times relevant to this action, she was pregnant.

8. Defendant Inside Out is an organization located in Springfield, Ohio. Inside Out comprises a community center, meal preparation facility, and childcare center. Inside Out identifies itself as a tax-exempt public charity and a "Christian Organization."

9. Defendant William Stout is the founder, president, and director of Inside Out. Stout resides in Springfield, Ohio.

## FACTUAL BACKGROUND

10. Maudlin was employed as a cook at Inside Out between 2008 and 2012. Her duties consisted of preparing, serving, and cleaning up after meals. Maudlin was fully qualified for the position she occupied at Inside Out, and performed her assigned duties in a satisfactory manner.

11. In its Employee Handbook, Inside Out states that it "abides by all applicable laws prohibiting discrimination on account of race, sex, color, religion/creed, citizenship, national origin, ancestry, age, marital status, or disability." The Employee Handbook specifies more than twenty activities in which its staff are prohibited from engaging, including smoking, yelling at children, having cell phones in classrooms, being under the influence of any impairing substance, and making decisions based on "personal gain." Neither non-marital sex nor pregnancy is mentioned anywhere, much less prohibited by any rule, in the Handbook.

12. Maudlin had no ministerial duties. She is not a practicing Christian, a fact known to Defendants at the time of Maudlin's hiring and employment.

13. At the time Maudlin was hired by Inside Out, Defendants were aware that she was unmarried and had a non-marital son. During Maudlin's employment, Defendants further became aware that Maudlin had previously had another non-marital child who was by then deceased.

14. On or about August 28, 2012, Maudlin told Cathy Ernst ("Ernst"), Inside Out's Office Manager, that she was pregnant. Ernst responded with an expression of shock. Ernst told Maudlin that she should not work that week, but that she should work the following Saturday, September 1, because Inside Out was short staffed on that day. Maudlin did as she was instructed.

15. On or about September 4, 2012, her next regularly scheduled work day, Maudlin called Ernst to see if she could report to work that day. Ernst indicated that she would discuss Maudlin's situation with director Stout. A short time later, Ernst called Maudlin back,

told her that she had spoken with Stout, and that "given [Maudlin's] circumstances," and "what had happened to other girls in [Maudlin's] situation," Maudlin could not continue working at Inside Out. Ernst indicated that the decision to terminate Maudlin had been made by Stout.

16. Had Maudlin not been discharged, she would have continued working at Inside Out during her pregnancy and after the birth of her child.

17. During her years at Inside Out, Maudlin had learned of unmarried female employees being fired or targeted for other adverse employment actions for becoming pregnant. She therefore anticipated that, when her pregnancy became known to Inside Out, she would be targeted for discrimination.

18. On information and belief, Inside Out maintains a pattern or practice of firing or taking other adverse employment actions against unmarried women for becoming pregnant. This practice results in a culture of fear among unmarried pregnant women employed at Inside Out.

19. On information and belief, Inside Out does not inquire into the sexual behavior of male employees, and has employed one or more male employees with non-marital children. Further, on information and belief, Inside Out has previously retained male workers, whether directly or in a contract capacity, while knowing that those employees had engaged in non-marital sex, or alcohol or drug use, or criminal sexual conduct.

20. Inside Out has a policy and practice of policing the non-marital sexual activity of its female employees. To determine who among its employees engage in non-marital sex, Inside Out, on information and belief, relies primarily or exclusively on the discovery of employee pregnancies.

    a. Inside Out thus looks to, and relies upon, pregnancy status to single out employees for termination or other adverse employment action. In so doing, it subjects women to disparate treatment.

    b. Because non-pregnant employees of Inside Out also engage in non-marital sex but, under Inside Out's practice are not subjected to termination or other adverse employment action, Inside Out effectively applies its policy – enforcing a ban on non-marital sex – to pregnant employees while permitting or ignoring non-marital sex by non-pregnant employees. As a result, Inside Out's policy has a disparate impact on pregnant women.

21. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including pain and suffering, the loss of past and future wages, and other privileges and conditions of employment.

22. Defendants' discriminatory actions against Plaintiff were willful, reckless and/or malicious and render Defendants liable for past and future economic and non-economic compensatory and punitive damages, back-pay and front-pay, as well as attorneys' fees, costs, expenses and any other equitable relief that this Court deems appropriate.

## FIRST CAUSE OF ACTION
Title VII – Sex and Pregnancy Discrimination
(Disparate Treatment)

23. Plaintiff realleges the prior paragraphs, as if fully set forth below.

24. Defendants discriminated against Plaintiff on the basis of sex and pregnancy in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq:

    a. by terminating Plaintiff for becoming pregnant; and/or

    b. by terminating Plaintiff for becoming pregnant while unmarried, thereby subjecting Plaintiff to discriminatory sex-based stereotypes regarding unmarried mothers; and/or

    c. by maintaining and subjecting Plaintiff to a sex-based double standard of employee conduct.

25. Defendants further violated 42 U.S.C. §2000e-2(m) because Plaintiff's sex and/or her pregnancy were motivating factors in Defendants' decision to terminate Plaintiff's employment.

## SECOND CAUSE OF ACTION
Title VII – Sex and Pregnancy Discrimination
(Disparate Treatment and Disparate Impact)

26. Plaintiff realleges the prior paragraphs, as if fully set forth below.

27. Defendants discriminated against Plaintiff on the basis of sex and pregnancy by enforcing a purported policy regarding employee moral or sexual conduct exclusively or primarily against women, and/or the subclass of pregnant women, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(k):

    a. by routinely policing the moral behavior of all pregnant employees, but not routinely policing the moral behavior of all non-pregnant employees, thus discriminating against women by using pregnancy status as a proxy for or badge of possible immoral behavior; and/or

    b. by terminating or taking adverse employment actions against pregnant employees for engaging in non-marital sex, but not terminating or taking adverse

employment actions against men or other non-pregnant employees for engaging in non-marital sex, thus discriminating against those who became pregnant.

### THIRD CAUSE OF ACTION
Sex and Pregnancy Discrimination, Ohio Rev. Code §4112.99
(Disparate Treatment/Disparate Impact)

28. Plaintiff realleges the prior paragraphs, as if fully set forth below.

29. Defendants discriminated against Plaintiff by terminating her for becoming pregnant, in violation of Ohio Rev. Code §§4112.02(A) and 4112.99.

### FOURTH CAUSE OF ACTION
Wrongful Discharge in Violation of Public Policy

30. Plaintiff realleges the prior paragraphs, as if fully set forth below.

31. Ohio has a public policy embodied in relevant state and federal statutory and case authority prohibiting the arbitrary and unfair treatment of Ohio citizens as a result of their status as unmarried mothers. If Defendants are permitted to terminate Plaintiff's employment for being an unmarried mother, this public policy will be jeopardized.

**WHEREFORE**, Plaintiff requests:

A. That this Court enter a permanent injunction enjoining Defendants, and all their respective agents, employees, and others in active concert with them from discriminating on the basis of sex and/or pregnancy;

B. That this Court enter an order requiring Defendants to enact a written policy of non-discrimination against pregnant employees and any subset of pregnant employees;

C. That this Court award Plaintiff Jennifer Maudlin an amount in excess of $500,000 to fully, fairly, and justly compensate her for injury, damage and loss, including past economic, future economic and non-economic compensatory damages, consequential damages, incidental damages, punitive damages, interest, and any additional relief that the Court deems appropriate; and

D. That this Court award Plaintiff reasonable attorney fees and court costs incurred in prosecuting this action.

### REQUEST FOR JURY TRIAL

Plaintiff requests a jury trial on all issues so triable.

Respectfully submitted,

/s/ James L. Hardiman
James L. Hardiman (0031043)
jhardiman@acluohio.org
TRIAL ATTORNEY
Jennifer Martinez Atzberger (0072114)
jatzberger@acluohio.org
Drew S. Dennis (0089752)
ddennis@acluohio.org
American Civil Liberties Union of Ohio Foundation
4506 Chester Avenue
Cleveland, OH 44103
(216) 473-2220

Lenora M. Lapidus
llapidus@aclu.org
(Pro Hac Vice Motion filed concurrently)
Mie Lewis
mlewis@aclu.org
(Pro Hac Vice Motion filed concurrently)
American Civil Liberties Union – Women's Rights Project
125 Broad St., 18th Fl.
New York, NY 10004
(212) 519-7848

Freda J. Levenson (0045916)
fjl3@case.edu
(Pro Hac Vice Motion filed concurrently)
21499 Shelburne Rd.
Shaker Heights, OH 44122
(216) 533-9490