**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| Jennifer Maudlin, | |
| Plaintiff, | Civil Action No. 3:13-cv-00354 |
| v. | |
| Inside Out, Inc. and William Stout, | Chief Magistrate Judge Sharon L. Ovington |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION TO COMPEL**

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Jennifer Maudlin was employed as a cook at Defendant Inside Out, a self-described "Christian organization" that comprises a community center, meal preparation facility, and childcare center in Springfield, Ohio. Compl. ¶¶ 8, 10. Defendant William Stout is and was the founder, the president, and the director of Inside Out. *Id.* ¶ 9. Plaintiff's duties consisted of preparing, serving, and cleaning up after meals. *Id.* ¶ 10. She had no ministerial duties at Inside Out and was not a practicing Christian, a fact known to Defendants at the time of her hiring and employment. *Id.* ¶ 12.

Maudlin became pregnant. On or about August 28, 2012, she informed her immediate supervisor of her pregnancy. *Id.* ¶¶ 13, 14. The supervisor, Cathy Ernst, responded that she (Ernst) would have to discuss Maudlin's "situation" with Stout. After speaking with Stout, Ernst told Maudlin that Stout had decided to terminate her "given what had happened to other girls in [Plaintiff's] situation." *Id.* ¶ 15. Maudlin inferred that

1

Ernst was referring to the fact that she (Maudlin) was unmarried. During her years at Inside Out, Maudlin had learned about other unmarried female employees who were also fired or subjected to other adverse employment actions for becoming pregnant. *Id.* ¶ 17.

Maudlin filed this lawsuit against Inside Out and William Stout ("Defendants"), alleging employment discrimination on the basis of sex and pregnancy in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and Ohio Rev. Code § 4112.02(A), and wrongful discharge in violation of the public policy of the State of Ohio. Maudlin's Title VII claims against Stout have been dismissed but her other claims against Stout, and all of her claims against Inside Out, remain.

This motion to compel concerns interrogatories and related document requests (collectively, "Requests") 3, 5, 11, 12, and 13 propounded by Plaintiff to the Defendants. Request 3 asks for information and documents relating to oral communications about Defendants' rules, expectations, and employee code of conduct. Request 5 asks for information and documents identifying employees whose employment at Inside Out terminated on or after January 1, 2008, and discussing the reason for their termination. Request 11 asks for news, reports, court filings, law enforcement records, and administrative records relating to child abuse and mistreatment by Stout. Request 12 asks for information and documents pertaining to Inside Out employees known by the employer to have engaged in nonmarital sexual activity, to have had a child outside of marriage, or to have engaged in cohabitation. Request 13 asks for responses and

documents pertaining to Inside Out employees' pregnancy, parental status, sexual activity, marital status, religious beliefs, morality, or behavior.[1]

After numerous discussions between the parties, defendants continue to refuse to comply with these requests. For the reasons discussed below, their objections are without merit. The Court should therefore compel them to comply with Plaintiff's discovery requests.

## ARGUMENT

### I. Plaintiff Is Entitled to Discovery of Records of Charges Against Stout For Abuse or Neglect of Minors (Request 11).

**Revised Interrogatory 11 states:** Identify all news reports, court filings (including, without limitation, complaints, answers, motions, affidavits, documents relating to the posting of bond, and court orders and judgments), police or sheriff incident reports and records, or any records by any agency charged with preventing child abuse or neglect referring or relating to any allegation—whether or not Defendant Stout agrees that the allegation is true or justified—that Defendant Stout inappropriately touched a child, had a child sleep in his bed with him, picked up a child by his neck, placed a child in a headlock, or in any way assaulted, abused, neglected or mistreated a minor.[2]

---

[1] Plaintiff's First Set of Interrogatories is attached hereto as Exhibit A; Plaintiff's First Set of Document Requests is attached hereto as Exhibit B; Defendants' Answers and Objections to Plaintiff's First Set of Interrogatories is attached hereto as Exhibit C; and Defendants' Responses and Objections to Plaintiff's First Set of Document Requests is attached hereto as Exhibit D. Further correspondence related to discovery is attached hereto as Exhibits E-H. Portions of the correspondence that are unrelated to the discovery dispute have been redacted.

[2] Plaintiffs revised Interrogatory 11 in response to Defendants' objection that the initial version was "overly broad" and "unduly burdensome." Despite Plaintiff's having made the interrogatory more specific, Defendants apparently stand by their original objection as applied to the revised version. All of the specific acts stated in revised Interrogatory 11 are acts that Stout has been charged with according to official documents found in the public record. See Exhibits I and J, discussed *infra* on page 7.

**Document Request 11 states:**  Produce all documents identified in response to Interrogatory 11.

Defendants object to Interrogatory 11 and Document Request 11 (together, "Request 11") on several grounds: that the request "assumes a fact that is not true and calls for speculation," that it is overly broad and unduly burdensome, and that it is not reasonably calculated to lead to admissible evidence. Ex. C, at 5, and D at 4. None of these objections avail.

  A.  *Request 11 neither assumes any untrue facts nor calls for speculation.*

Defendants' original objection to Plaintiff's initial interrogatory and corresponding document request stated that they "assumed a fact that is not true" and called for speculation.[3] Defs.' Resps. and Objections to Pl.'s First Set of Interrogs., Ex. C, Answer 11. Plaintiff did not concede this point; however, for purposes of streamlining the discovery process and attempting to reach an agreement, Plaintiff revised the interrogatory and document request in question to remove any speculative aspect by omitting reference to violations of the code of conduct, and instead requesting only official records and court filings related to the conduct in question. Defendants nonetheless have stated that they are standing by their original objections in their entirety. It is unclear how these aspects of the Defendants' original objection survive the revision of Plaintiffs' request, as the information currently sought does not assume anything at all,

---

[3] The original document request asked for documents and records "relating or referring to any report, allegation, or charge making any claim about Defendant Stout that, if true, would violate the rules, policies, or code of conduct of Inside Out."

4

nor does it require any speculation. Rather, it seeks only official records of specific types of conduct. Defendants should be compelled to produce them.

B. *Request 11 is neither overly broad nor unduly burdensome.*

Defendants also argue that Request 11 is "overly broad" and "unduly burdensome." Defs.' Resps. and Objections to Pl.'s First Set of Interrogs., Ex. C, Answer 11. But "a general statement that the discovery is overly broad and unduly burdensome . . . is insufficient to deny discovery." *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 311 (W.D. Tenn. 2008). Rather, Defendants "must show specifically how . . . each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive . . . by submitting affidavits or offering evidence revealing the nature of the burden." *Roesberg v. Johns-Mansville Corp.*, 85 F.R.D. 292, 296–97 (E.D. Pa. 1980) (citations omitted). Defendants offer no information at all to support their contention that this request for specific information is burdensome, nor have they suggested any way to narrow it. Not only have defendants failed to provide any basis for their objection, it is difficult to imagine what basis could exist. If existing official records of charges related to child abuse or neglect are in fact so numerous or voluminous that producing them would be a burden, then the Defendant must produce evidence to the Court supporting such a claim.

C. *Request 11 is reasonably calculated to lead to the discovery of admissible evidence.*

Next, Defendants argue that Request 11 is "not reasonably calculated to lead to the discovery of admissible evidence." Defs.' Resps. and Objections to Pl.'s First Set of Interrogs., Ex. C, Answer 11. This argument is equally meritless. Federal Rule of Civil Procedure 26(b)(1) provides that a party "may obtain discovery regarding any

nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "The key phrase in this definition—'relevant to the subject matter involved in the pending action'—has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citations omitted). Thus, "[u]nless it is clear that the information sought *can have no possible bearing* on the claim or defense of a party, the request for discovery should be allowed." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) (emphasis added). Request 11 easily passes muster under this broad standard.

Inside Out claims to have a policy prohibiting immoral activity by its employees, and that this policy justified the termination of the plaintiff. Affidavit of William Stout, *Maudlin v. Inside Out*, Case No. 532 2013 00993 ¶ 3 (Ohio Civil Rights Comm'n) ("Stout Affidavit"), Ex. K, ("Since the children and youth that we serve are influenced by our conduct as much, if not more, than our words, Inside Out maintains standards of conduct for its employees that are based on Christian principles, ethics and morality."); *id.* ¶ 4 ("As a faith-based organization, Inside Out does not condone sexual relationships outside of marriage. . . . Inside Out believes that its credibility would be materially compromised if it permitted employees to engage in the types of relationships that it teaches the at-risk youth that it serves to avoid.")).

If indeed Inside Out has such a policy, it must apply that policy equally to male and female employees. It is well-established that an employer engages in impermissible discrimination if it enforces an otherwise permissible morality policy in a discriminatory fashion or if pregnancy alone triggers the policy's application. *See, e.g., Hamilton v.*

*Southland Christian School, Inc.*, 680 F.3d 1316, 1320–21 (11th Cir. 2012); *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 667 (6th Cir. 2000). In this case, publicly available documents known to the Plaintiff show that Stout has been criminally charged in Indiana for choking and holding an unrelated child in a headlock, *see* Ex. I, and that he was the subject of an Ohio Sheriff's incident report for sexual improprieties with a minor in his care, *see* Ex. J. Further evidence related to these charges or others could lead to the discovery of admissible evidence that the company's "standards of conduct for its employees based on Christian principles, ethics and morality" was applied unequally. Evidence that Stout, the company president and director, engaged with impunity in activity that would violate that policy, such as sexual activity outside of marriage or illegal activities such as the abuse of minors, would support Plaintiff's Title VII claim that male and female employees were treated unequally, and thus, that the company engaged in sex and pregnancy discrimination. Compl. ¶ 19.

Moreover, evidence that Stout engages or engaged in sexually improper conduct and other abuse of minors would severely undermine Defendants' affirmative defense that "any employment action taken with regard to the plaintiff was for legitimate, non-discriminatory business reasons." Ans. ¶ 26; *see also* Stout Affidavit ¶ 4, Ex. K, quoted above. A showing that Stout himself engages or has engaged in conduct that itself directly contradicts "Christian principles" and compromises Inside Out's credibility with the at-risk youth it purports to serve, *id.* ¶¶ 3,4, would demonstrate that Defendants' "legitimate, non-discriminatory" reasons for terminating her were merely pretextual. *See Cline*, 206 F.3d at 667 (stating that a plaintiff may "indirectly show pretext by showing

7

that the employer's proffered explanation [for the adverse employment action] is unworthy of credence" (internal quotation marks omitted)).

In addition to supporting Plaintiff's discrimination claims and undermining Defendants' affirmative defenses, evidence that Stout acted in a blatantly hypocritical manner when he penalized Plaintiff for her "misconduct" of having a child outside of marriage—conduct which, unlike child abuse, is not unlawful—would also support Plaintiff's request for punitive damages, by showing that Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights. *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535, 538 (1999) (holding that a plaintiff may justify a request for punitive damages under Title VII by showing that his or her employer acted with malice or reckless indifference to the plaintiff's federally protected rights).

Finally, to the extent that Defendants' objections rest on the notion that the information sought is unduly prejudicial and therefore might be ultimately be inadmissible at trial, *see* Defs.' Jan. 7, 2015 Letter to Pl., Ex. H, any such concern is irrelevant to the scope of discovery. Federal Rule of Civil Procedure 26(b)(1) provides that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." For this reason, courts have consistently held that the courts should balance documents' probative value and prejudicial effect when considering their admissibility as evidence, not their discoverability. *See, e.g.*, *Wilson v. Hill*, No. 2:08–CV–552, 2010 WL 5014486, at *2 (S.D. Ohio December 3, 2010) ("[W]hether evidence . . . is more prejudicial than probative . . . should await resolution at trial. . . . [T]he Court simply considers whether Plaintiff's requests for information . . . is reasonably calculated to lead to the discovery of

admissible evidence . . .  under Fed. R. Civ. P. 26(b).”); *see also, e.g.*, *Gibbs v. City of New York*, 243 F.R.D. 95, 96 (S.D.N.Y. 2007) (holding that while unsubstantiated complaints may not be admissible at trial as unfairly prejudicial, they are nevertheless discoverable). As discussed above, reports of Stout's misconduct are undoubtedly relevant to the claims and defenses in this case, and are therefore properly subject to discovery. The Court should order Defendants to comply with Request 11.

### II.  Stout's Conversations With His Employees Are Not Protected by the Clergy-Penitent Privilege (Requests 3, 12, 13).

**Interrogatory 3 states:** Identify all documents and oral communications stating, referring to, or relating to Defendant(s)' rules, expectations, or employee code of conduct in effect at any time on or after January I, 2008, including but not limited to any policy against non-marital sexual activity, pregnancy or parenthood, or any policy relating to employees' religious faith, beliefs, or comportment with religious principles.

**Document Request 3 states:** Produce all documents in response to Interrogatory 3.

**Interrogatory 12 states:** Identify every employee who, while an employee of Defendant or Defendants, is or was known by the Defendant or Defendants to have engaged in non-marital sexual activity, who had a child out of wedlock, or who resided in the same household as another adult to whom he or she was not legally married at any time during the period January 1, 2008 through the present; and, for each such employee, identify all documents and oral communications relating to any such sexual activity, parenthood, or cohabitation.

**Document Request 12 states:** Produce all personnel records of every employee identified in response to Interrogatory 12 and all other documents identified in response to Interrogatory 12.

**Interrogatory 13 states:** Identify all documents and oral communications regarding or relating to any employee's (other than Plaintiff) (a) status as pregnant or as a mother or father, and/or to (b) his or her sexual activity, marital status, religious beliefs, morality, or behavior.

**Document Request 13 states:** Produce all documents identified in response to Interrogatory 13 and the personnel records of all employees who are the subject of the documents or communications identified in response to Interrogatory 13.

In response to Interrogatories and Document Requests 3, 12, and 13, (together, "Requests 3, 12, and 13"), Defendants invoke the clergy-penitent privilege. They maintain that "[t]o the extent William Stout is a minister, any oral communication he may have had with parishioners who were also employees of Inside Out, Inc. are privileged." Defs.' Resps. and Objections to Pl.'s First Set of Interrogs., Ex. C, Answer 11. Contrary to Defendants' assertion, however, the clergy-penitent privilege may extend only to confidential communications made to a qualified cleric in his or her professional capacity as a spiritual advisor. *See In re Grand Jury Investigation*, 918 F.2d 374, 384 (3d Cir. 1990). Here, Defendants have not carried their burden of demonstrating that Stout qualifies as a cleric for purposes of the privilege. And, even if Stout happens to be a cleric, that does not convert conversations with his employees about workplace codes of conduct into spiritual advice. It is clear that the clergy-penitent privilege does not apply to the requested information.

Where, as here, there are both federal and supplemental state law claims at issue, the federal common law of privilege governs the entire case. *See Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992) (construing Federal Rule of Evidence 501). The Supreme Court has instructed that federal common law privileges "must be strictly construed and 'accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth.'" *Trammel v. United States*, 445 U.S. 40, 50 (1980) (quoting *Elkins v. United States*, 364 U.S. 206, 234 (1960)). Although

10

the Sixth Circuit has not yet decided whether the clergy-penitent applies in federal judicial proceedings, many other federal courts have recognized it. *See, e.g.*, *In re Grand Jury Investigation*, 918 F.2d at 383 (collecting cases); *see also Trammel*, 445 U.S. at 44 (1980) (recognizing the clergy-penitent privilege in dicta). Plaintiff assumes, for the sake of the following discussion, that the privilege applies.

The clergy-penitent privilege "recognizes the human need to disclose to a spiritual counselor, in total and absolute discretion, what are believed to be flawed acts or thoughts and to receive priestly consolation and guidance in return." *Trammel* at 51. In light of this rationale, the privilege is subject to a three-factor test, limiting its protection to "communications made (1) to a clergyperson (2) in his or her spiritual and professional capacity (3) with a reasonable expectation of confidentiality." *In re Grand Jury Investigation*, 918 F.2d at 384; *cf. Varner v. Stovall*[4], 500 F.3d 491, 495 (6th Cir. 2007) ("Although the scope of the [clergy-penitent] privilege varies from State to State, all States at a minimum 'require that the communications be made in private, with an expectation of confidentiality, to a minister in his or her professional capacity as a member of the clergy.'" (citations omitted)).

As with respect to other privileges, the party who asserts the clergy-penitent privilege bears the burden of proving its existence and applicability. *In re Grand Jury Investigation*, 918 F.2d at 385 n.15; *cf. In re Grand Jury Investigation No. 83–2–35*, 723 F.2d 447, 450–51 (6th Cir. 1983) (articulating same burden with respect to attorney-client privilege); *United States v. Mardis*, No. 08–20021, 2011 WL 90314, at *9 (W.D. Tenn.

---

[4] The *Varner* court applied state privilege law because the underlying claim was a state criminal charge. Here, however, as in *Hancock*, supra, "the existence of pendent state law claims does not relieve (the court) of (its) obligation to apply the federal law of privilege. *Varner* at 1376.

Jan. 11, 2011) (same with respect to marital privilege). "This burden can be met only by an evidentiary showing based on competent evidence and cannot be discharged by mere conclusory or ipse dixit assertions." *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 470 (S.D.N.Y. 1993) (discussing attorney-client privilege) (internal citations and quotation marks omitted) (collecting cases).

In this case, Defendants cannot carry their burden of demonstrating either of the first two factors.[5]

A. *Defendants have not demonstrated that Stout qualifies as a cleric within the meaning of the clergy-penitent privilege.*

First, Defendants have not demonstrated that Stout qualifies as a cleric for purposes of the clergy-penitent privilege. Courts have tended to apply the privilege to "ordained ministers, rabbis, Christian Science practitioners, as well as priests." *United States v. Dube*, 820 F.2d 886, 889 n.9 (7th Cir. 1987). In so defining the scope of the privilege, courts have been careful not to extend its protections to any and everyone who claims some religious or spiritual affiliation. In *Matter of Wood*, for example, the district court held that the clergy-penitent privilege did not apply to communications involving National Commission on Hispanic Affairs of the Episcopal Church, notwithstanding the Commission's religious affiliation, because the work performed by the Commission, "while perhaps performed under spiritual auspices," was "primarily in the nature of social work." 430 F. Supp. 41, 46 (S.D.N.Y. 1977).

---

[5] At this time, Plaintiff expresses no opinion as to whether the conversations at issue may have been confidential. But, to the extent any may have been, the confidentiality would be due to the personnel subject matter, not the clergy-penitent relationship necessary for assertion of the privilege. Such personnel matters are routinely subject to discovery in employment discrimination cases, and the requested information should be produced here.

Because parties seeking to assert the clergy-penitent privilege bear the burden of demonstrating its applicability, *In re Grand Jury Investigation*, 918 F.2d at 385 n.15, Defendants must provide evidence demonstrating that Stout qualifies as a cleric within the privilege's meaning. *See Eckmann v. Bd. of Educ.*, 106 F.R.D. 70, 72 (E.D. Mo. 1985) (observing that a nun asserting the clergy-penitent privilege "submitted a number of affidavits to establish that [her position as] a spiritual director is a recognized office in the Catholic Church, and is considered to be a form of ministry of the Gospel by the Church"). Defendants have provided no such evidence, nor have they even identified the specific religion or church to which Stout belongs. Indeed, Defendants have thus far not even squarely averred that Stout is, in fact, a cleric. Rather, their objections to Plaintiff's interrogatories and document requests state only that "*[t]o the extent* William Stout is a minister, any oral communication he may have had with parishioners who were also employees of Inside Out, Inc. are privileged." Defs.' Resps. and Objections to Pl.'s First Set of Interrogs., Ex. C, Answer 3 (emphasis added). Defendants have thus failed to bear their burden of demonstrating that Stout is a cleric within the meaning of the clergy-penitent privilege.

> B. *Stout's conversations with his employees took place in his capacity as their employer, not their professional spiritual advisor.*

Even assuming that Stout qualifies as a cleric for purposes of the clergy-penitent privilege the privilege does not apply because the allegedly privileged conversations did not engage Stout in his professional capacity as a spiritual advisor. Plaintiff's requests concern conversations between Stout and Inside Out's unmarried pregnant employees— conversations that were employment-related, rather than spiritual, in nature. The conversations at issue were initiated by Stout to secure adherence to work rules; they

were not sought out by "parishioners" to receive spiritual advice.  *See* Stout Affidavit, ¶ 5, Ex. K  ("With regard to single, expectant female employees, each situation is handled on a case by case basis. If the employee is willing to participate in counseling and is amenable to future adherence to the conduct standards of Inside Out, their employment is not affected.").

Defendants claim that the privilege applies to "*any* oral communication [Stout] may have had with parishioners who were also employees of Inside Out, Inc." Defs.' Resps. and Objections to Pl.'s First Set of Interrogs., Ex. C, Answer 3. But the clergy-penitent privilege simply does not extend to every oral communication a cleric has with someone who happens to be a "parishioner."[6] Rather, the privilege protects only those communications made to a cleric in his or her professional capacity as spiritual advisor to someone who is actually seeking spiritual advice. *See In re Grand Jury Investigation*, 918 F.2d at 384; *see also Varner*, 500 F.3d at 495–96. Courts have consistently refused to apply the privilege to communications that a person has with a cleric for some other reason, such as friendship, tax advice, or (as in this case) about compliance with the rules or standards of the work place. *See e.g.*, *Dube*, 820 F.2d at 889 ("If . . . one seeks out the clergy only for income tax avoidance, we see no more need for a protective privilege than if the taxpayer had consulted his butcher or barber. The taxpayer is not a penitent seeking spiritual relief from his sins, only a citizen seeking relief from his obligation to pay taxes."); *United States v. Gordon*, 655 F.2d 478, 486 (2d Cir. 1981) (holding that the

---

[6] Defendants do not define the term "parishioner" in their objections. Thus Defendants may be withholding Stout's conversations with fellow congregants of his church, -with employees of his who happen to be Christian, or -with some other amorphous group. During 26(b) discussion, Defendants' position was that the privilege extended to conversations with *anyone who might possibly convert* to Stout's religion. *See* Pl.'s Dec. 11, 2014 Letter to Defs., Ex. F.

clergy-penitent privilege did not protect defendant's conversations with a priest because the conversations "related to business relationships, not spiritual matters").

The Arkansas Supreme Court's decision in *Bonds v. State*, 837 S.W.2d 881 (Ark. 1992), is particularly instructive. There, the defendant asserted the clergy-penitent privilege in an attempt to exclude testimony by his former employer regarding alleged sexual abuse. *Id.* at 883. The defendant argued that he discussed the abuse with his employer, who was a minister and associate pastor of the Friendship Baptist Church, in his professional capacity as spiritual advisor. *See id.* But the court had "little difficulty" rejecting the defendant's claim of privilege, because the employer had called the defendant "as an employer" to determine whether he should fire the defendant over the alleged abuse. *Id.* at 883–84. Similarly, in the case at hand, Stout called his "expectant female employees" to "participate in counseling" and to see whether they were "amenable to future adherence to the conduct standards of Inside Out." Otherwise, "their employment [would be] affected." Stout Affidavit ¶ 5, Ex. K. This is manifestly not the rendition of spiritual advice.

This Court should not allow Stout to unilaterally convert, *post hoc*, any and all conversations with his employees into spiritual conversations simply because those conversations touched on the purported employee code of conduct. The cloak of the clergy-penitent privilege should not be held to extend that far, or it will become a vehicle to evade all manner of legitimate discovery.

> **C.** *The Court should compel Defendants to produce the requested information or, at the very least, compel production of a privilege log.*

The Court should reject Defendants' assertion of privilege and compel them to produce the requested information. If, however, the Court concludes that the clergy-

penitent privilege could feasibly apply to any of the requested communications, a privilege log will be necessary to assess whether the privilege applies to each specific conversation at issue. *See, e.g.*, *In re Priceline.com Inc. Sec. Litig.*, 233 F.R.D. 92, 94 (D. Conn. 2005) ("Defendants shoulder the burden of demonstrating that information is protected by the attorney-client privilege or the work product immunity doctrine, and must therefore supplement their privilege log to provide information necessary to make an informed determination of the validity of their objections."); *cf. In re Grand Jury Investigation*, 918 F.2d at 387 ("It is clear that the district court must develop a record and make findings, consistent with the prerequisites for the privilege that we have enumerated, concerning whether the [individuals at issue] communicated with Pastor Knoche in his spiritual or professional capacity and with a reasonable expectation of confidentiality."). Defendants have thus far refused to produce such a log, and they should be required to do so if the Court determines that further inquiry is required to determine whether the privilege applies to specific conversations.

### III. Defendants' Refusal to Identify Voluntary and Involuntary Terminations Is Baseless and Needlessly Obstructive (Request 5).

**Interrogatory 5 states:** Identify every employee whose employment with Defendant terminated on or after January 1, 2008 and the reason for that termination.

**Document Request 5 states:** Produce all personnel records and all other documents relating to the termination of each employee named in response to Interrogatory 5.

Defendants also object to Interrogatory 5 and Document Request 5 (together, "Request 5") on the grounds that it is "overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence." Defs.' Resps. and Objections to Pl.'s First Set of Interrogs., Ex. C, Answer 11. In a good-faith attempt to render Request 5 less burdensome for Defendants, Plaintiff altered the request so that

instead of identifying each terminated employee and providing the reason for termination, Defendants had only to indicate for each employee whether his or her termination was voluntary or involuntary. *See* Pl.'s Dec. 11, 2014 Letter to Defs., Ex. F Defendants nevertheless persist in refusing to timely provide the requested information—even though the request was initially propounded on August 2, 2014, even though the discovery cut-off is in about six weeks, and even though the answers to Request 5 may likely reveal additional witnesses for Plaintiff to depose.

In refusing to timely respond to Request 5, Defendants assert that "this is another one of those questions that calls for a narrative response which is more appropriate for a deposition." Defs.' Jan. 7, 2015 Letter To Pl., Ex. H But, although the Court may on a showing of good cause prescribe a discovery method other than the one selected by Plaintiff, Defendants "[do] not have the unilateral right to refuse to answer otherwise valid interrogatories just because [they] would prefer that [Plaintiff] ask the questions at a deposition instead. That is not [their] choice." *Jones-McNamara v. Holzer Health Sys.*, No. 2:13–cv–616, 2014 WL 3563406, at *2 (S.D. Ohio July 18, 2014).

Most importantly, Defendants are flatly incorrect that a deposition would more efficiently reveal this information, which is based entirely on compilations of employment records. No deponent could reliably answer a question about which employees, from a list of 249 names, terminated over the course of seven years, were terminated voluntarily and which involuntarily. This is precisely the type of information that is best sought through an interrogatory. *See* 8B Charles Alan Wright & Arthur R. Miller, *Fed. Practice & Procedure* § 2163 (3d ed. 2014) ("Interrogatories are an effective way to obtain simple facts, to narrow the issues by securing admissions from the other

17

party, and to obtain information needed in order to make use of the other discovery procedures."); *accord In re Shopping Carts Antitrust Litig.*, 95 F.R.D. 299, 307–08 (S.D.N.Y. 1982). The Court should put a stop to Defendants' obstructionist tactics by compelling them to promptly provide the requested information.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff's Motion to Compel should be GRANTED.

Respectfully submitted,

*/s/ Freda J. Levenson*

Freda J. Levenson (0045916)
ACLU of Ohio
4506 Chester Ave.
Cleveland, OH 44103
216-472-2220
flevenson@acluohio.org
Trial Attorney for Plaintiff

Lenora M. Lapidus*
llapidus@aclu.org
Galen Sherwin*
gsherwin@aclu.org
Brian Hauss
bhauss@aclu.org
(Pro Hac Vice Motion to be filed)
American Civil Liberties Union –
Women's Rights Project
125 Broad St., 18th Fl.
New York, NY 10004
(212) 519-7848

*Admitted *Pro Hac Vice*

## **CERTIFICATE OF SERVICE**

The foregoing motion was filed on the 15th day of January, 2015 through the Court's Electronic Filing System and parties will be served and may obtain copies electronically through the operation of the Electronic Filing System.

*/s/ Freda J. Levenson*

Freda J. Levenson (0045916)

Trial Attorney for Plaintiff